UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CURRY MANAGEMENT CORP. and CURRY CORPORATION,<br><br>                              Plaintiffs,<br><br>            - against -<br><br>JPMORGAN CHASE BANK N.A.,<br><br>                              Defendant. | CASE NO. 22 CIV 05006 (CM) (JW) |

# MEMORANDUM OF LAW OF
# JPMORGAN CHASE BANK, N.A.
# IN SUPPORT OF ITS MOTION TO DISMISS

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................ii

PRELIMINARY STATEMENT ...................................................................................... 1

UNDISPUTED FACTS AND ALLEGATIONS OF THE COMPLAINT ...................... 2

ARGUMENT ..................................................................................................................... 4

POINT I       PLAINTIFFS HAVE NO CONVERSION CAUSE OF
              ACTION UNDER EITHER UCC § 3-419 OR AT
              COMMON LAW BECAUSE THEY DID NOT HAVE
              ACTUAL OR CONSTRUCTIVE POSSESSION OF THE
              CHECKS ...................................................................................... 4

POINT II      PLAINTIFFS' COMMON LAW CLAIMS ALSO FAIL
              AGAINST CHASE AS A MATTER OF LAW ........................................ 10

        A.    Plaintiffs' Conversion Cause of Action Fails as a Matter of
              Law .......................................................................................... 11

        B.    Plaintiffs Fail to State a Claim for Money Had and
              Received ................................................................................... 13

        C.    Plaintiffs Fail to State a Claim for Unjust Enrichment ............................. 13

        D.    Plaintiffs' Negligence Claim Also Fails as a Matter of Law ..................... 15

POINT III     MANAGEMENT LACKS STANDING BECAUSE IT
              WAS NOT THE PAYEE OF THE CHECKS .......................................... 16

POINT IV      THE THREE-YEAR STATUTE OF LIMITATIONS
              PRECLUDES CERTAIN CHECK CLAIMS .......................................... 18

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                              **Page(s)**

Alzheimer's Found. of Am., Inc. v.
Alzheimer's Disease & Related Disorders Ass'n., Inc.,
  2014 U.S. Dist. LEXIS 199601 (S.D.N.Y. Mar. 14, 2014) ................................... 17

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ........................................................................... 7

B.B.C.F.D., S.A. v. Bank Julius Baer & Co., Inc.,
  2013 N.Y. Misc. LEXIS 526 (N.Y. Cnty. Sup. Ct. Jan. 24, 2013) ........................ 13

Banca Commerciale Italiana, New York Branch v.
Northern Trust Intern. Banking Corp.,
  160 F.3d 90 (2d Cir. 1998) ................................................................... 19

Barnes v. Uzu,
  2022 U.S. Dist. LEXIS 46014 (S.D.N.Y. Mar. 15, 2022) ...................................... 19

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ........................................................................... 7

Bouquet Brands Div. of J & D Food Sales, Inc. v. Citibank (N.Y. State), N.A.,
  97 A.D.2d 936 (3rd Dep't 1983) ............................................................. 15

Brash v. Richards,
  195 A.D.3d 582 (2d Dep't 2021) ............................................................. 19

Calisch Assocs., Inc. v. Manufacturers Hanover Trust Co.,
  151 A.D.2d 446 (1st Dep't 1989) ............................................... 13, 14, 15

Citi Connect, LLC v. Local Union No. 3, IBEW,
  2020 U.S. Dist. LEXIS 185796 (S.D.N.Y. Oct. 7, 2020) ...................................... 19

Citibank, N.A. v. Walker,
  12 A.D.3d 480 (2nd Dep't 2004) ............................................................. 13

Cruz v. TD Bank,
  855 F. Supp. 2d 157 (S.D.N.Y. 2012) ...................................................... 16

DiFolco v. MSNBC Cable LLC,
  622 F.3d 104 (2d Cir. 2010) ................................................................... 3

Fisher v. JPMorgan Chase Bank,
  740 Fed. Appx. 746 (2d Cir. 2018) .......................................................... 8

Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Privee,
    106 F.3d 146 (2d Cir. 1998) ............................................................................. 11, 12

Gallery Garage Mgmt. Corp. v. Chemical Bank,
    226 A.D.2d 305 (1st Dep't 1996) ......................................................................... 5

Geler v. Nat'l Westminster Bank USA,
    770 F. Supp. 210 (S.D.N.Y 1991) ..................................................................... 12

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009) .................................................................................. 7

Hayden v. Paterson,
    594 F.3d 150 (2d Cir. 2010) ................................................................................ 7

Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5,
    689 Fed. App'x 662 (2d Cir. 2017) ..................................................................... 8

In re Musicland Holding Corp.,
    374 B.R. 113 (S.D.N.Y. Bankr. 2007) ................................................................ 9

Ins. Co. of the State of Pa. v. HSBC Bank USA,
    37 A.D.3d 251 (1st Dep't 2007) ......................................................................... 13

Kings County v. IKB Deutsche Industriebank AG,
    863 F. Supp. 2d 288 (S.D.N.Y. 2012) ............................................................... 16

Kramer v. Chase Manhattan Bank, N.A.,
    235 A.D.2d 371 (1st Dep't 1997) ....................................................................... 16

L-7 Designs, Inc. v. Old Navy, LLC,
    647 F.3d 419 (2d Cir. 2011) ................................................................................ 8

Lake Minnewaska Mountain Houses v. Rekis,
    259 A.D.2d 797 (3rd Dep't 1999) ...................................................................... 13

Lawyers' Fund for Client Protection v. Gateway State Bank,
    239 A.D.2d 826 (3rd Dep't 1997) ...................................................................... 18

Lund v. Chemical Bank,
    760 F. Supp. 51 (S.D.N.Y. 1991) ...................................................................... 17

Lundstedt v. JP Morgan Chase Bank, N.A.,
    853 Fed. App'x 704 (2d Cir. 2021) ..................................................................... 8

Luxonomy Cars, Inc. v. Citibank, N.A.,
    65 A.D.2d 549 (2d Dep't 1978) .................................................................... 12, 15

Mahon v. Ticor Title Ins. Co.,
    683 F.3d 59 (2d Cir. 2012) ..................................................................... 17

Mandarin Trading Ltd. v. Wildenstein,
    2007 N.Y. Misc. LEXIS 7141 (N.Y. Cnty. Sup. Ct. Sept. 4, 2007) ...................... 14

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chem. Bank,
    57 N.Y.2d 439 (1982) ............................................................................ 15

Mich. Ins. Repair Co. v. Mfrs. Nat'l Bank,
    194 Mich. App. 668, 487 N.W.2d 517 (Mich. Ct. App. 1992) ............................. 17

Moleon v. Alston,
    2021 U.S. Dist. LEXIS 232345 (S.D.N.Y. 2021) ...................................... 3

Mt. Vernon Trust Co. v. Fed. Reserve Bank of N.Y.,
    267 A.D. 882 (2nd Dep't 1994) .............................................................. 18

Paramount Film Distrib. Corp. v. State of New York,
    30 N.Y.2d 415 (1972) ...................................................................... 13, 14

Perry v. NYSARC, Inc.,
    424 F. App'x 23 (2d Cir. 2011) ................................................................ 8

Premium Mortg. Corp. v. Equifax, Inc.,
    583 F.3d 103 (2d Cir. 2009) .................................................................... 8

Prudential-Bache Secs., Inc. v. Citibank, N.A.,
    73 N.Y.2d 263 (1989) .......................................................................... 10

Rachunow v. Jamieson,
    2021 U.S. Dist. LEXIS 89880 (S.D.N.Y. May 11, 2021) ....................... 19

Raymond v. JPMorgan Chase Bank, N.A.,
    2010 N.Y. Misc. LEXIS 1491 (Nassau Cnty. Sup. Ct. Feb. 3, 2010) ............... 16

Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.,
    2011 NY Slip Op 51884(U), 33 Misc. 3d 1211(A),
    2011 N.Y. Misc. LEXIS 4907 (Kings Cnty. Sup. Ct. 2011) ........................ 18, 19

Schochet v. Bank of Am., N.A.,
    2016 N.Y. Misc. LEXIS 64 (N.Y. Cnty. Sup. Ct. Jan. 7, 2016) ..................... 15

Scolnick v. Bank One, N.A.,
    2014 N.Y. Misc. LEXIS 1074 (N.Y. Cnty. Sup. Ct. Mar. 7, 2014) .................. 17

Segal v. Bitar,
   2012 U.S. Dist. LEXIS 10812 (S.D.N.Y. Jan. 30, 2012) ......................................... 11

State of New York v. Barclays Bank of New York,
   76 N.Y.2d 533 (1990) ................................................................. 1, 5, 6, 17

Stuto v. Fleishman,
   164 F.3d 820 (2d Cir. 1991) .................................................................... 3

Tonelli v. Chase Manhattan Bank, N.A.,
   41 N.Y.2d 667 (1977) ............................................................................. 15

Tripp & Co., Inc. v. Bank of New York (Del), Inc.,
   28 Misc. 3d 121(A), 911 N.Y.S. 2d 696 (N.Y. Cnty. Sup. Ct. July 14, 2010)
   2010 N.Y. Misc. LEXIS 3210 ................................................................. 10

United Magazine Co. v. Murdoch Magazines Distrib.,
   2001 U.S. Dist. LEXIS 20878 (S.D.N.Y. Dec. 17, 2001)........................................ 17

Weshnak v. Bank of Am., N.A.,
   451 Fed. Appx. 61 (2d. Cir. 2012) ........................................................... 8

Wexselblatt v. Bank of Boston Int'l,
   666 F. Supp. 513 (S.D.N.Y. 1987)............................................................ 12

Wright v. Bank of Am.,
   2009 NY Slip Op 52655(U), 26 Misc. 3d 1203(A), 1203A,
   906 N.Y.S.2d 784 (Nassau Cnty. Sup. Ct. 2009) .................................. 1, 5

Zaidi v. JPMorgan Chase Bank, N.A.,
   2021 U.S. Dist. LEXIS 42379 (E.D.N.Y. March 5, 2021) ...................................... 15

## **Statutes**

CPLR § 214 ............................................................................................. 19

Fed. R. Civ. P. 12 ................................................................................... 3

N.Y. Exec. Law § 29-a ............................................................................. 19

UCC § 3-419 ................................................................................. 4, 5, 17, 19

## **Other**

Barkley Clark & Barbara Clark, 1 The Law of Bank Deposits,
Collections and Credit Cards, (3rd ed. 2020) ............................................. 10, 11

James J. White, Robert S. Summers & Robert A. Hillman,
Uniform Commercial Code (Thompson West 6th ed. 2021) §17:46................................. 6, 18

## PRELIMINARY STATEMENT

Plaintiffs Curry Corporation ("Curry") and Curry Management Corp. ("Management") had the misfortune to do business with a company, Employee Benefit Solutions LLC ("EBS"), that allegedly turned out to be crooked and allegedly received and deposited checks that were payable to Curry.  Clearly, Curry has a claim against EBS and its principals, and perhaps against its own insurance carrier for the allegedly stolen checks.  Even if EBS and its principals are insolvent and Curry neglected to take out adequate insurance coverage, Curry could certainly assert a claim against the drawer of the checks for the proceeds of the underlying obligations represented by the checks Curry claims it never received.[1]

The one party against whom Curry has no claim, however, is JPMorgan Chase Bank, N.A. ("Chase"), because under well-settled New York Court of Appeals authority, Curry never had possession of the checks at issue.  See State of New York v. Barclays Bank of New York, 76 N.Y.2d 533 (1990).  No amount of artful pleading can disguise the fact that neither Curry nor Management had actual or constructive possession

---

[1] See State of New York v. Barclays Bank of N.Y., N.A., 151 A.D.2d 19, 23 (3rd Dep't 1989) ("even though the payee cannot recover from the collecting bank, he is not remediless for he has the right to sue the drawer on the obligation giving rise to the check"), aff'd 76 N.Y.2d 533 (1990); Wright v. Bank of Am., 2009 NY Slip Op 52655(U), ¶ 4, 26 Misc. 3d 1203(A), 1203A, 906 N.Y.S.2d 784, 784 (Sup. Ct., Nassau Cnty. 2009) ("even before the UCC, New York barred a payee from suing the depository bank absent delivery of the check, thereby requiring the payee to sue the drawer on the underlying obligation").

of the checks.  Accordingly, because plaintiffs lack the requisite possessory interest in the checks, they do not have standing to sue Chase.

The common law claims (Counts II through V) also fail as a matter of law because they are misplaced attempts to circumvent the UCC, and further because they also fail to plead the requisite elements sufficient to state a claim for conversion, money had and received, unjust enrichment and negligence.

Management lacks standing for another reason as well: it is not the payee on any of the checks at issue.  (See Point III, <u>infra</u>.) In addition, certain of the checks are also time-barred by the applicable CPLR three-year statute of limitations, as extended by the Governor's Executive Order for an additional 228 days. (See Point IV, <u>infra</u>.)

## <u>UNDISPUTED FACTS AND ALLEGATIONS OF THE COMPLAINT</u>

Curry is a car dealer that contracted with EBS to act as administrator of plaintiffs' employee benefit plan.  (Compl. ¶¶ 2, 9-10: a copy of the complaint is annexed as Exhibit 1 ("Compl.") to the accompanying Declaration of Ronald M. Neumann, Esq.) Pursuant to its contract with Management, EBS had many enumerated responsibilities for administering plaintiffs' employee benefit plan, but none of them included receiving checks from insurers and forwarding them to Curry, as the complaint alleges. (Compl.

¶ 11.)  (A copy of the Administration Contract, specifically referenced in ¶ 10 of the complaint, is annexed as Exhibit 2 to the Declaration of Ronald M. Neumann, Esq.)[2]

The Administration Contract between Management and EBS is very detailed and specific about the scope of EBS's duties thereunder.  EBS's enumerated contractual duties included establishing and administering the employee benefit plan, which involved determining eligibility, reporting the claim expenses, paying premiums of approved service providers, managing a checking account in the name of the benefit plan and preparing and delivering those checks for approved claims to Management, employees or the approved service providers.  (Ex. 2, ¶ I).  There is nothing in the EBS-Management contract that designates EBS as Curry's agent to obtain or receive checks from stop-loss insurers and forward them to plaintiffs.  In fact, the only duty the contract imposed on EBS with respect to stop-loss insurers was to procure the insurance, for which EBS was entitled to receive commissions and fees.  (Id., ¶ II.F.)  Moreover, the contract provides that it "shall constitute the *entire Contract* between the Parties."  (Id.,  ¶ V) (emphasis added.)

---

[2]    In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading.  See Stuto v. Fleishman,164 F.3d 820, 826 n.1 (2d Cir. 1991); Moleon v. Alston, 2021 U.S. Dist. LEXIS 232345, *5 n.1 (S.D.N.Y. 2021) (citing DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  The EBS-Management contract is specifically cited in the Complaint.  (See Compl. ¶ 10.)

EBS received 23 checks drawn by Partners Managing General Underwriters ("Partners"), addressed to EBS and payable to the order of Curry Corporation[3], in the aggregate amount of $1,069,400.12 (the "Checks"). (Compl. ¶¶ 6, 17; Ex. 3.) According to the complaint, Partners issued the Checks to reimburse a portion of the individual medical claims submitted by *Curry* employees pursuant to a stop-loss policy between Partners and one of the plaintiffs. EBS deposited the Checks to the credit of an account maintained at Chase in the name of EBS during the period from September 2018 to March 2019. (Compl. ¶¶ 6, 17, 21.)

## ARGUMENT

## POINT I

## PLAINTIFFS HAVE NO CONVERSION CAUSE OF ACTION UNDER EITHER UCC § 3-419 OR AT COMMON LAW BECAUSE THEY DID NOT HAVE ACTUAL OR CONSTRUCTIVE POSSESSION OF THE CHECKS

Plaintiffs' first cause of action in the complaint alleges that EBS improperly obtained the Checks and "fraudulently endorsed, negotiated, and presented the Checks" to the credit of EBS's account with Chase. (Compl. ¶¶ 32, 60). Admittedly, neither plaintiff ever had possession of the Checks. Nor can they plausibly allege

---

[3]   Partners submitted a "fraud claim" to Chase (Compl. ¶ 25) that relied on a Declaration of Unauthorized Endorsement ("Partners' Declaration"), which was incorporated by reference into Curry's subsequent correspondence with Chase. Both Partners' Declaration and Curry's correspondence are annexed as Exhibit 3 to the accompanying Declaration of Maribel Cabrieles. Partners' Declaration, inter alia, appended copies of the 23 checks at issue, all of which are payable to the order of "Curry Corporation".

constructive possession of the Checks.  Accordingly, plaintiffs lack standing to assert a conversion claim against Chase under UCC § 3-419.

It is well-settled law that a payee of a check must have actual or constructive possession of the check in order to maintain an action against a depositary bank, such as Chase in this case.  See State of New York v. Barclays Bank of New York, 76 N.Y.2d 533 (1990).  The Court of Appeals in Barclays Bank explains that a payee must have actual or constructive possession of a negotiable instrument in order to have an interest in it.  See id., 76 N.Y.2d at 537; Gallery Garage Mgmt. Corp. v. Chemical Bank, 226 A.D.2d 305 (1st Dep't 1996) ("Pursuant to State of New York v. Barclays Bank (76 N.Y.2d 533), a named payee must have had actual or constructive possession in order to sue a depositary bank on an instrument that the payee claims was paid over a forged indorsement. By its own admission, plaintiff never had such possession and therefore never attained the status of a true owner or holder of the instrument."); Wright v. Bank of America, 26 Misc. 3d 1203(A), 906 N.Y.S.2d 784, 2009 N.Y. Misc. LEXIS 3515, at *8 (Nassau Cnty. Sup. Ct. 2009) ("it is well-settled that a named payee must have actual or constructive possession in order to sue a depositary bank on a forged instrument and here, there is neither an allegation nor any evidence that plaintiff had either actual or constructive possession of the Check").

As a matter of law, it does not matter whether plaintiffs characterize their claim against Chase as one governed by UCC § 3-419, as a common law claim for conversion or indeed any other common law claim.  As Barclays Bank clearly holds,

whatever the theory advanced by plaintiff – without actual or constructive possession of the check, a payee states no cause of action against the depositary bank (in this case, Chase):

> For purposes of resolving the legal question before us – the effect of lack of delivery of the checks – *it makes no difference whether plaintiff's action is under UCC 3-419(1)(c) or under some common-law theory. The result is the same* . . . .

Id., 76 N.Y.2d at 536 n.2 (emphasis added.)

Constructive possession requires that the check be "physically delivered into the hands of a co-payee or an agent of the payee." See James J. White & Robert S. Summers, Uniform Commercial Code § 15-4(a) at 560 (5th ed. 2000). Plaintiffs try, but fail, to walk a factual and legal tightrope. On the one hand, if plaintiffs allege that EBS was plaintiffs' agent to obtain, deposit and disburse the Checks, then plaintiffs would have the requisite constructive possession of the checks, but EBS's possession of the Checks would be authorized and there could be no UCC (or other) claim against Chase.

In order to satisfy the pleading requirements established by Barclays, while still maintaining a claim against Chase, plaintiffs take the implausible position that EBS was plaintiffs' agent solely for the purpose of forwarding the Checks – without indorsing or depositing them – to Curry. It defies any rational belief that Curry engaged EBS solely to delay its own possession of the Checks, by doing nothing more than receiving the Checks at the EBS address only to re-route their delivery to a Curry address.

This would constitute money management of the most nonsensical variety.  However, this Court is not required to indulge plaintiffs' excursion into the fanciful or the fantastic, even at this early stage of the litigation.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  The Court must find the claim rests on factual allegations that "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To determine plausibility, courts follow a "two-pronged approach."  Iqbal, 129 S. Ct. at 1950.  "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal punctuation omitted).  Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) ("The plausibility standard is not akin to a 'probability requirement,'" but it asks for more than a sheer possibility that a defendant has acted unlawfully.")  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, supra, 556 U.S. at 679.

The Second Circuit has consistently held, under <u>Iqbal</u>, that allegations must be plausibly alleged in the complaint to withstand a motion to dismiss.  <u>See</u> <u>e.g.,</u> <u>Lundstedt v. JP Morgan Chase Bank, N.A.</u>, 853 Fed. App'x 704, 707 (2d Cir. 2021) (complaint did not plausibly allege that Chase was a debt collector); <u>Fisher v. JPMorgan Chase Bank</u>, 740 Fed. Appx. 746, 747 (2d. Cir. 2018) (plaintiff did not plausibly allege fraud or aiding and abetting fraud); <u>Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5</u>, 689 Fed. App'x 662, 664 (2d Cir. 2017) (plaintiff did not plausibly allege the assignments of his mortgage caused injury); <u>Weshnak v. Bank of Am., N.A.</u>, 451 Fed. Appx. 61, 62 (2d Cir. 2012) (plaintiffs did not plausibly allege aiding and abetting fraud, conversion, and breach of fiduciary duty committed by bank); <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 108 (2d Cir. 2009) (affirming dismissal of claim where the "complaint present[ed] only conclusory allegations . . . and we find them facially implausible").  In rendering its determination on plausibility, a court should consider "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419, 430 (2d Cir. 2011).

This Circuit has also recognized an exception to the rule that a court must accept all factual assertions as true when allegations supporting the claim are contradicted "by documents upon which the pleadings rely."  <u>Perry v. NYSARC, Inc.</u>, 424 F. App'x 23, 25 (2d Cir. 2011) ("However, there is a narrow exception to this rule for factual

assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice.") (citation omitted). Critically, where "a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference . . . , the court is not required to accept them."   In re Musicland Holding Corp., 374 B.R. 113, 119-120 (S.D.N.Y. Bankr. 2007).

This Court, therefore, need not credit plaintiffs' dubious allegations that contradict the terms of the actual contract between EBS and Management that plaintiffs baselessly claim included "forwarding claim payments that it received from various stop-loss insurers to Curry...." (Compl. ¶ 11.)  The contract between EBS and Management very specifically enumerates the 16 duties that EBS was required to undertake, and not one references receiving stop-loss payment checks and re-routing them to Curry's address.  (Ex. 2.) EBS's duties with respect to stop-loss insurers was simply to "[p]rocure stop loss insurance."   (Ex. 2, ¶¶ I.B, IIF.)   EBS's sole responsibility with respect to checks was to "[m]anage the checking account(s) established in the name of the Benefit Plan, prepare checks for payment of approved claims and forward checks to the Employer [Management], employee or any eligible health care provider."  (Id. ¶ I.D.)  The contract thus specifies a checking account to be maintained by EBS for the purpose of issuing checks for the payment of approved claims, and sending those checks, drawn on the Benefit Plan's account, to Management, Plan participants or providers.  The contract contains no reference to receiving checks from third parties and transmitting them

(undeposited) to Curry.  The contract provides that it "shall constitute the entire Contract between the parties."  (Id. ¶ v.)

Indisputably, the contract contains nary a word about receiving checks from stop-loss insurers to forward to Curry.  Without actual or constructive possession of the Checks, which the plaintiffs never had, they have no cause of action against Chase, under either the UCC or at common law.

**POINT II**

**PLAINTIFFS' COMMON LAW CLAIMS ALSO<br>FAIL AGAINST CHASE AS A MATTER OF LAW**

All the common law claims asserted by plaintiffs suffer from the same defect.  They are a baseless attempt to circumvent the Uniform Commercial Code. However, a plaintiff may not substitute a common law claim to replace a failed UCC statutory claim.  See Prudential-Bache Secs., Inc. v. Citibank, N.A., 73 N.Y.2d 263, 273 (1989); Tripp & Co., Inc. v. Bank of New York (Del), Inc., 28 Misc. 3d 121(A), 911 N.Y.S. 2d 696, 2010 N.Y. Misc. LEXIS 3210, at *13 (N.Y. Cnty. Sup. Ct. July 14, 2010), ("A plaintiff may not 'sidestep' the UCC by merely attempting to restate a failed UCC claim as a common law cause of action").

A leading commentator on UCC issues points out that the UCC completely occupies the field of check loss allocation and, thus, it displaces the common law claims that plaintiffs assert:

> [T]he rules governing check fraud loss allocation are set forth with particularity in Articles 3 and 4 of the UCC.

> Because these rules "displace" common-law notions of negligence, conversion and "account stated," it would be improper for a court to invoke these theories in a common-law form to reallocate fraud loss.

Barkley Clark & Barbara Clark, 1 <u>The Law of Bank Deposits, Collections and Credit Cards</u>, § 1.02[3] (3rd ed. 2020). Accordingly, each cause of action should be dismissed for this reason alone, but additionally, they each individually fail to state a claim upon which relief can be granted.

**A.     Plaintiffs' Conversion Cause of Action**
**        <u>Fails as a Matter of Law</u>**

Plaintiffs' conversion cause of action against Chase, besides being precluded by plaintiffs' failure to possess the Checks, should also be rejected for failure to state a claim.

The complaint's allegations do not satisfy the elements of an action for conversion, *i.e.*, that: (1) plaintiffs had legal ownership or a possessory interest in property that is specific and identifiable; and (2) defendant exercised unauthorized dominion over that property. See <u>Segal v. Bitar</u>, 2012 U.S. Dist. LEXIS 10812, at *26-27 (S.D.N.Y. Jan. 30, 2012); <u>Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Privee</u>, 106 F.3d 146, 148 (2d Cir. 1998). Plaintiffs never had legal ownership over the Checks, which they admittedly never possessed. And Chase did not exercise control or dominion over the Checks. As plaintiffs concede, Chase merely credited them, on its books, to EBS. (Compl. ¶ 61.)

Plaintiffs' conversion claim seeks proceeds of checks deposited to the credit of an account with Chase.  It is well-settled that proceeds of a checking account may not be the subject of a conversion claim.  See Fundacion Museo de Arte, supra, 160 F.3d at 148  ("funds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank."); Wexselblatt v. Bank of Boston Int'l, 666 F. Supp. 513, 517 (S.D.N.Y. 1987) (a bank account does not satisfy the requirement that an action for conversion requires "specific and identifiable property") (citation omitted);  Luxonomy Cars, Inc. v. Citibank, N.A., 65 A.D.2d 549 (2d Dep't 1978) ("An action for conversion requires specific and identifiable property.  A checking account . . . does not satisfy that requirement and cannot be converted."); Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y 1991) (a creditor has an unsecured claim to the amount of the funds credited to an account, not to specific dollars or property).   Accordingly, the funds that are the subject of plaintiffs' conversion claim – 23 checks deposited over the course of six months – are not "sufficiently specific and identifiable in relation to the bank's other funds" to support a conversion cause of action as a matter of law.  See Fundacion Museo, supra, 106 F.3d at 148.

In sum, on multiple grounds, plaintiffs' conversion claim fails as a matter of law.

**B.**      **Plaintiffs Fail to State a Claim for Money Had and Received**

Plaintiffs' second claim, purporting to allege money had and received fails to meet both essential elements of the claim, that "(1) defendant received money belonging to plaintiff; [and] (2) defendant benefited from the receipt of the money." B.B.C.F.D., S.A. v. Bank Julius Baer & Co., Inc., 2013 N.Y. Misc. LEXIS 526, at *21 (N.Y. Cnty. Sup. Ct. Jan. 24, 2013); see Ins. Co. of the State of Pa. v. HSBC Bank USA, 37 A.D.3d 251, 255 (1st Dep't 2007).

Here, Chase is not alleged to have received money belonging to plaintiffs. As plaintiffs concede, the proceeds of the Checks (which plaintiffs never possessed in any event) were deposited to the credit of EBS's account. (Compl. ¶ 61.)  Thus, Chase never possessed the proceeds.  See Calisch Assocs., Inc. v. Manufacturers Hanover Trust Co., 151 A.D.2d 446, 448 (1st Dep't 1989).  Moreover, Chase never benefited from EBS's receipt of the proceeds of the Checks.  Therefore, the purported money had and received claim fails as a matter of law.

**C.**      **Plaintiffs Fail to State a Claim for Unjust Enrichment**

To prevail on a claim of unjust enrichment, a plaintiff must show that (1) the defendant was enriched, (2) at plaintiff's expense, and (3) that "it is against equity and good conscience to permit [plaintiff] to retain what is sought to be recovered." Paramount Film Distrib. Corp. v. State of New York, 30 N.Y.2d 415, 421 (1972), cert. denied, 414 U.S. 829 (1973); see Lake Minnewaska Mountain Houses v. Rekis, 259

A.D.2d 797, 798 (3rd Dep't 1999); <u>Citibank, N.A. v. Walker</u>, 12 A.D.3d 480, 481 (2nd Dep't 2004).

   In considering an unjust enrichment claim, "courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law . . . and whether the defendant's conduct was tortious or fraudulent." <u>Paramount</u>, <u>supra</u>, 30 N.Y.2d at 42. The Court of Appeals stated that "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." <u>Id.</u> Further, the court must decide "whether the facts as alleged bring the case within the legal definition of unjust enrichment, as the jury determines only whether the facts are as claimed." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 2007 N.Y. Misc. LEXIS 7141 (N.Y. Cnty. Sup. Ct. Sept. 4, 2007) (citation omitted).

   Plaintiffs' unjust enrichment claim fails as a matter of law because, as shown above, Chase is not alleged to have and never did possess the proceeds of the Checks and thus never received a benefit. <u>See</u> <u>Calisch Assocs., Inc.</u>, 151 A.D.2d at 448. Chase was never enriched by EBS's receipt of the proceeds of the Checks. Accordingly, the elements of pleading an unjust enrichment claim against Chase have not been met and the facts as alleged do not support such a claim in any event.

**D.      Plaintiffs' Negligence Claim**
**        Also Fails as a Matter of Law**

   Plaintiffs' fourth cause of action in the complaint alleges negligence (Compl. ¶¶ 51-57.)  Plaintiffs fail to allege the source of any duty that Chase allegedly owed to plaintiffs.  For this reason alone, plaintiffs' purported negligence claim against Chase fails as a matter of law.

   However, even if plaintiffs amended their complaint to allege a legally adequate relationship with Chase, the law is clear, that a customer may not sue its bank for negligence based solely on that contractual relationship.  See Calisch Assocs. Inc., 151 A.D.2d at 448; Bouquet Brands Div. of J & D Food Sales, Inc. v. Citibank (N.Y. State), N.A., 97 A.D.2d 936, 937 (3rd Dep't 1983); Luxonomy Cars, supra, 65 A.D.2d at 550.  "[T]he underlying relationship between a bank and its depositor is [a] contractual one of debtor and creditor."  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chem. Bank, 57 N.Y.2d 439, 444, 456 (1982); see Tonelli v. Chase Manhattan Bank, N.A., 41 N.Y.2d 667, 670 (1977).

   Absent a duty *independent* of the contractual debtor-creditor relationship, which plaintiffs fail to assert or establish, a cause of action for negligence may not be sustained under New York law.  See Zaidi v. JPMorgan Chase Bank, N.A., 2021 U.S. Dist. LEXIS 42379, at *17 (E.D.N.Y. March 5, 2021) ("The typical banking relationship does not involve any duty that could support a tort-based negligence claim."); Schochet v. Bank of Am., N.A., 2016 N.Y. Misc. LEXIS 64, at *19 (N.Y. Cnty. Sup. Ct. Jan. 7,

2016) ("Plaintiffs' negligence claim fails since they do not allege a duty arising from an extra-contractual relation with the Bank."); <u>Raymond v. JPMorgan Chase Bank, N.A.</u>, 2010 N.Y. Misc. LEXIS 1491, at *30-31 (Nassau Cnty. Sup. Ct. Feb. 3, 2010) ("New York law has explicitly refused to recognize any cause of action for negligent breach of contract"); <u>Kramer v. Chase Manhattan Bank, N.A.</u>, 235 A.D.2d 371 (1st Dep't 1997) (negligence claim cannot be sustained against a bank absent "for example, a statute, regulation, internal bank policy or written agreement imposing" an independent duty on the bank).

Further, the economic loss doctrine also precludes plaintiffs' negligence claim against Chase.  "This doctrine prevents a plaintiff from recovering purely economic losses in a negligence action."  <u>Cruz v. TD Bank</u>, 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012); <u>see</u> <u>Kings County v. IKB Deutsche Industriebank AG</u>, 863 F. Supp. 2d 288, 302 (S.D.N.Y. 2012) ("Under New York's 'economic loss' rule, a plaintiff cannot recover in tort for purely economic losses caused by a defendant's negligence.").

In sum, plaintiffs' purported negligence cause of action fails as a matter of law.

## POINT III

### MANAGEMENT LACKS STANDING BECAUSE <u>IT WAS NOT THE PAYEE OF THE CHECKS</u>

By "lumping" both plaintiffs together as "Curry," the complaint fails to identify which one was the payee on the Checks, and thus which one claimed an interest

in the proceeds of the Checks.  See United Magazine Co. v. Murdoch Magazines Distrib.,
2001 U.S. Dist. LEXIS 20878 at *7 (Dec. 17, 2001 S.D.N.Y. 2001) ("Because plaintiffs
lumped themselves together, on the one hand, and lumped together all other wholesalers,
on the other hand, it was impossible to tell which plaintiffs, if any, stated a claim.")
However, based on documentary evidence, there is no dispute that each of the Checks
was payable only to the order of Curry Corporation.  Management was not the payee on
any of the Checks.  (See Ex. 3.)

       A party has standing to bring a claim only when it is the proper party to
bring each claim that it seeks to prosecute.  See Mahon v. Ticor Title Ins. Co., 683 F.3d
59, 64 (2d Cir. 2012).  It is well-settled that "the (putative) named payee of a check lacks
standing to pursue a conversion claim under § 3-419 if the payee never had possession of
the check."  Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders
Ass'n., Inc., 2014 U.S. Dist. LEXIS 199601, at *30-2 (S.D.N.Y. Mar. 14, 2014) (citing
Barclays Bank, supra; see also Lund v. Chemical Bank, 760 F. Supp. 51, 53 n.2 (S.D.N.Y.
1991) ("Barclays conclusively established as New York law that a payee may maintain
[an action under § 3-419] against a depositary bank only if the payee at some time
possessed the instrument in question."); Mich. Ins. Repair Co. v. Mfrs. Nat'l Bank, 194
Mich. App. 668, 674, 487 N.W.2d 517, 520 (Mich. Ct. App. 1992) ("Because plaintiff is
not a payee of the check, it has the right to negotiate the check only if it is a holder. A
holder is a person in possession of an instrument issued or indorsed to him or to bearer or
in blank.  The check was not issued or indorsed to plaintiff or to bearer, so plaintiff can

negotiate the check only if it is in possession of the check after it is indorsed in blank.")
(statutory citations omitted).

Management was not the payee or the holder of any of the Checks.  Thus, Management has no proprietary interest in the Checks or the proceeds thereof. Accordingly, Management should be dismissed from this action for lack of standing.

**POINT IV**

**THE THREE-YEAR STATUTE OF LIMITATIONS**
**PRECLUDES CERTAIN CHECK CLAIMS**

A cause of action for conversion of a check accrues when the check is deposited to the account of one not entitled to possess it.  See Scolnick v. Bank One, N.A., 2014 N.Y. Misc. LEXIS 1074, at *5-6 (N.Y. Cnty. Sup. Ct. Mar. 7, 2014) (UCC statute of limitations began to run when the drawee paid a check with a forged indorsement); Mt. Vernon Trust Co. v. Fed. Reserve Bank of N.Y., 267 A.D. 882 (2nd Dep't), aff'd, 293 N.Y. 654 (1944); Lawyers' Fund for Client Protection v. Gateway State Bank, 239 A.D.2d 826, 827 (3rd Dep't 1997); Samuel L. Hagen II, P.C. v. J.P.Morgan Chase Bank, N.A., 2011 NY Slip Op 51884(U), 33 Misc. 3d 1211(A), 2011 N.Y. Misc. LEXIS 4907, at *42 (Kings Cnty. Sup. Ct. 2011); see also 2 James J. White, Robert S. Summers & Robert A. Hillman, Uniform Commercial Code (Thompson West 6th ed. 2021) §17:46 at 217 - 219 (citing cases at 217 n. 8).

Thus, if plaintiffs had standing to pursue a claim pursuant to the UCC, or for common law conversion, it accrued when the Checks were paid.  The statute of

limitations for UCC actions pursuant to § 3-419 is three years.  See CPLR § 214(2) (actions to recover for liability created or imposed by statute); Banca Commerciale Italiana, New York Branch v. Northern Trust Intern. Banking Corp.,160 F.3d 90, 95 (2d Cir. 1998) (holding UCC claims are governed by CPLR § 214(2) with a three-year statute of limitations); Samuel L. Hagan II, P.C., supra, 2011 NY Slip Op 51884(U) at *12, 2011 N.Y. Misc. LEXIS 4907, at *30 ("this claim is a statutory UCC claim . . . the applicable period of limitations is the three-year statute of limitations set forth in CPLR 214(2), which defines the period to commence actions to recover upon liability created or imposed by statute"); Rachunow v. Jamieson, 2021 U.S. Dist. LEXIS 89880, at *7 (S.D.N.Y. May 11, 2021) ("New York has a three-year statute of limitations for a claim of conversion.").

An Executive Order, in effect from March 20, 2020, to November 3, 2020, extended non-contractual based statutes of limitations for an additional 228 days.  See N.Y. Exec. Law § 29-a; Barnes v. Uzu, 2022 U.S. Dist. LEXIS 46014 (S.D.N.Y. Mar. 15, 2022); Citi Connect, LLC v. Local Union No. 3, IBEW, 2020 U.S. Dist. LEXIS 185796, at *9 (S.D.N.Y. Oct. 7, 2020) (McMahon, J.); Brash v. Richards, 195 A.D.3d 582 (2d Dep't 2021).

Plaintiffs filed their complaint on May 13, 2022.  Accordingly, any claims for Checks deposited before September 27, 2018 are time-barred pursuant to the applicable three-year statute of limitations plus 228 days.

## **CONCLUSION**

As shown above, because plaintiffs never had actual or constructive possession of the Checks and because each of their purported common law claim fails as a matter of law, Chase respectfully requests entry of an Order dismissing plaintiffs' complaint with prejudice and granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        July 29, 2022

ZEICHNER ELLMAN & KRAUSE LLP

By: /S/ Ronald M. Neumann

Ronald M. Neumann
*Attorneys for Defendant*
 *JPMorgan Chase Bank, N.A.*
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

4879-7796-4584

20